(No. 83-CC-1028–

(Nos. 82-CC-2764, 83-CC-0467, 83-CC-1370, 83-CC-1576, 83-CC-2413, 83-CC-2508, 83-CC-2571, 83-CC-2697, 83-CC-2714, 83-CC-2788—

MARY NORMAN, Admx. of the Estate of Keith Biggerstaff; SHEL BANNISTER *et al.*; G. FLINT TAYLOR; LONNIE ARSBERRY *et al*; G. FLINT TAYLOR and JAN SUSLER; SIEGFRIED STUBBS; RICHARD BLACK; UNIVERSITY OF CHICAGO; ARNESTA GRIGGS; LEGAL ASSISTANCE FOUNDATION OF CHICAGO; and ANDREW W. EDWARDS and LEAHY & LEAHY, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 2, 1983.*

*Opinion filed June 25, 1982.*

*Opinion filed December 15, 1982.*

*Opinion filed June 29, 1983.*

DAVID C. THOMAS, for Claimant Mary Norman.

G. FLINT TAYLOR, for Claimant Shel Bannister.

JAN SUSLER, for Claimant G. Flint Taylor.

RUTHANNE DE WOLFE, for Claimants Lonnie Arsberry *et al.*

JAN SUSLER, for Claimants G. Flint Taylor and Jan Susler.

J. DAVID FARREN, for Claimant Siegfried Stubbs.

ROBERT L. BYMAN, of JENNER & BLOCK, for Claimant Richard Black.

MARY HEYRMAN, of MANDEL LEGAL AID CLINIC, for Claimant University of Chicago.

ROBERT V. BOHARIC, for Claimant Arnesta Griggs.

SALLY T. ELSON, for Claimant Legal Assistance Foundation of Chicago.

LEAHY & LEAHY, for Claimants Andrew W. Edwards and Leahy & Leahy.

NEIL F. HARTIGAN, Attorney General (ROBERT SHUFF AND WILLIAM WALLIN, Assistant Attorneys General, of counsel), for Respondent.

ROE, C. J.

This is a claim pursuant to an Act to provide for representation and indemnification (Ill. Rev. Stat. 1981, ch. 127, par. 1301 et seq.) hereinafter referred to as the Act. The Claimant sued several State officers and employees in a case entitled *Norman v. Sielaff*, 76-C-4677, in which she alleged violation of rights guaranteed by the United States Constitution while the deceased was an inmate in the custody of the Illinois Department of Corrections. That case was settled by an agreement dated October 28, 1982, which provided that the defendant State officers and employees pay $22,000.00.

Under the Representation and Indemnification Act, a State officer or employee is entitled to representation by the Attorney General and indemnification for damages awarded, court costs, and attorney fees when he is sued in a civil proceeding in which the plaintiff alleges deprivation of a civil or constitutional right arising out of an act or omission occurring within the scope of his employment. The Act was passed in response to developments in Federal law which subjected State officers and employees to Federal suit.

Whether Claimant here is entitled to an award depends on whether the State officers and employees would be. The State officers and employees sued were all officers or employees of the Department of Corrections and were represented by the Attorney General. Thus, he has determined that the State officers and employees were entitled to the benefits of the Act.

The first claim in this Court made pursuant to the Representation and Indemnification Act was *DeWoskin v. State,* No. 78-CC-1703. (Although the claim is still pending, the relevant issue was decided in an as yet unpublished opinion dated April 20, 1981). Since that time numerous other claims under the Act have been made in the Court of Claims and paid by the Court of Claims following legislative funding of the award made.

Since *DeWoskin* and after reviewing the subsequent claims we have had the opportunity of further examination of the Act and we now find it necessary to further define the limits of jurisdiction which we will exercise over such claims.

In *DeWoskin* we stated at page six as follows:

"We hold that a cause of action brought pursuant to the Indemnification Act is properly cognizable in this Court, under section 8(a) of the Court of Claims Act, because it is a claim against the State founded upon a law of the State."

We said that the nature of a claim arising under the Act is the collection by a State employee of money to which he or she becomes entitled by complying with the provisions of the statute. We also noted that there was no provision made in the Act for administrative review of the determinations made by the Attorney General and therefore a court in the judicial branch could not be placed in the position of entering a judgment for monetary damages against the State by overturning the Attorney General's determinations. Thus we found that the Court of Claims was the only forum to which a party could come to have the Indemnification Act enforced (except perhaps in a situation involving a *mandamus* action, a situation which to our knowledge has not arisen to date and one on which we do not comment or speculate).

*DeWoskin* was a contested matter. The relevant issue arose out of a determination by the Attorney General that the Claimant therein was not entitled to representation and indemnification. We found it to be our function essentially to review that determination. There were issues of fact and law to be decided.

All the claims brought pursuant to the Act after *DeWoskin* were uncontested in this Court as is the case at bar. We have not been asked to decide any issue; we have been used as a conduit for payment of an obligation of the State. In the case at bar compliance with the requirements of the Act entitling Claimant to its coverage was determined by the Attorney General prior to the claim being filed and the only thing remaining is payment. This situation is expressly covered by section 2(d) of the Act which provides as follows:

"(d) The costs of indemnification, court costs and litigation expenses and other costs of providing a defense, including attorneys' fees, paid or obligated under this Section, shall be allocated to and paid from the budget of the General Assembly, court, State officer, department, division, bureau, board, commission, committee, agency or instrumentality, against whose emplyee the claim or cause of action is asserted." (Ill. Rev. Stat. 1981, ch. 127, par. 1302(d)).

The Act does not make provision for payment through the Court of Claims when the obligation is at this stage. The Claimant has an express statutory remedy which there has been no showing or allegation that he has exhausted as required by section 25 of the Court of Claims Act. Ill. Rev. Stat. 1979, ch. 37, par. 439.24—5.

In this case the employees worked for the Department of Corrections. It is from their budget that the Act provides payment should be made. If the Department of Corrections has a line item appropriation out of which this claim could be paid, the obligation is due and payable immediately. If the Department does not have such an appropriation, it should seek one.

Wherefore, it is hereby ordered that this claim be, and hereby is, dismissed.

## OPINION

Roe, C. J.

This is a claim pursuant to An Act to provide for representation and indemnification (Ill. Rev. Stat. 1979, ch. 127, par. 1301 et seq.), herein the Representation and Indemnification Act. The Claimants represented prisoners who sued several State officers and employees in cases entitled *Preston v. Thompson,* 78-C-3512 and *Prisoners of Pontiac v. Thompson,* 78-C-3006, in which they alleged violation of civil rights guaranteed by the eighth amendment to the United States Constitution while they were inmates in the Pontiac Correctional Center. The suit arose out of the deadlock imposed at the Pontiac Correctional Center in July 1978. In a memorandum opinion and order dated June 30, 1981, the Federal district court awarded attorney fees of $101,000 and $3,322.73 in costs. On May 24, 1982, this decision was affirmed by the United States Court of Appeals for the Seventh Circuit Court.

Under the Representation and Indemnification Act, a State officer or employee is entitled to representation by the Attorney General and indemnification for damages awarded, court costs, and attorney fees when he is sued in a civil proceeding in which the plaintiff alleges deprivation of a civil or constitutional right arising out of any act or omission occurring within the scope of his employment. The Act was passed in response to developments in Federal law which subjected State officers and employees to Federal suit.

Whether Claimants here are entitled to an award depends on whether the State officers and employees would be. The officers and employees sued were all officers or employees of the Department of Corrections and Law Enforcement and were represented by the Attorney General. We have examined the complaint and Respondent's stipulation and the memorandum opinion and order and opinion on appeal and have determined that the State officers and employees sued would be entitled to indemnification. They were acting within the scope of their employment. The Court did not find that the conduct was intentional, willful or wanton.

Claimants are hereby awarded $104,322.73 to be distributed as follows:

| | |
|---|---|
| Shel Bannister | $12,000.00 |
| Gerald Block | 5,000.00 |
| Michael Deutsch | 5,000.00 |
| Jeffrey Haas | 20,000.00 |
| Charles Hoffman | 5,000.00 |
| Laurie Shatsoff | 5,000.00 |
| G. Flint Taylor | 20,000.00 |
| David C. Thomas | 25,000.00 |
| Malcolm Young | 4,000.00 |
| Peoples Law Office | 3,322.73 |

## OPINION

ROE, C.J.

This is a claim pursuant to An Act to provide for representation and indemnification (Ill. Rev. Stat. 1981, ch. 127, par. 1301 *et seq.*), herein the Representation and Indemnification Act. The Claimant represented a prisoner who sued several State officers and employees in a case entitled *Smith v. Rowe*, No. 77-1029, in which she alleged violations of civil rights guaranteed by the first, fifth, sixth, and fourteenth amendments to the United States Constitution while she was an inmate in a correctional center. In an order dated May 7, 1982, the Federal district court awarded interim attorney fees of $15,000. On September 23, 1982, an appeal of this order was dismissed by the United States Court of Appeals for the Seventh Circuit.

Under the Representation and Indemnification Act, a State officer or employee is entitled to representation by the Attorney General and indemnification for damages awarded, court costs, and attorney fees when he is sued in a civil proceeding in which the plaintiff alleges deprivation of a civil or constitutional right arising out of any act or omission occurring within the scope of his employment. The Act was passed in response to developments in Federal law which subjected State officers and employees to Federal suit.

Whether Claimant here is entitled to an award depends on whether the State officers and employees would be. The officers and employees sued were all officers or employees of the Department of Corrections and Law Enforcement and were represented by the Attorney General. We have examined the complaint, the stipulation, and the order and opinion on appeal and have determined that the State officers and employees sued would

be entitled to indemnification.

Claimant is hereby awarded $15,000. The question of interest is reserved.

## OPINION

ROE, C.J.

These are all claims made pursuant to An Act to provide for representation and indemnification (Ill. Rev. Stat. 1981, ch. 127, par. 1301 *et seq.*). The underlying facts in these claims are not in dispute and for the purpose of this opinion need not be restated herein. Typical of the procedural and legal circumstances in each is *Norman v. State*, No. 83-CC-1028, and reference is made to our opinion therein, dated May 2, 1983, for background information. Said opinion could be controlling as to all of these claims.

However, the Respondent has petitioned the Court for reconsideration of said claim along with others which were dismissed based on our decision on that claim. The additional claims were filed subsequent to our decision in *Norman, supra*. The Respondent has stipulated to the facts and to our granting of awards of the full amounts claimed in each case.

Two cases representative of the group, *Norman* and *Bannister*, were set for oral argument before the full Court and oral arguments were held on June 28, 1983, at the Court of Claims courtroom in Springfield, Illinois. We have carefully reviewed the Respondent's petition for reconsideration and considered the oral arguments presented. For the most part, we find them long on rhetoric and short on substance. Moreover, we think the Respondent has misinterpreted the *Norman* opinion.

In our previous opinion we stated that since exercising jurisdiction over this type of claim a little over two

years ago we had the opportunity to further examine the situation and found it necessary to further define the parameters of our jurisdiction with respect to these types of claims. It was our opinion that the approach we had taken in the past should be modified as should the Respondent's approach to the problem.

We did not comment on the merits of the claim. There is no question that the Respondent does in fact and law owe the money sought in each of these claims. We simply stated that under the circumstances it was premature. The claim is no different from any other ordinary and contingent expense incurred by a State agency. An attempt should be made by the agency which incurred the obligation to pay it itself in the ordinary course of business just as it would any other bill. Contrary to Respondent's stated perceptions of this Court and its new position, we have not abrogated our role as an advisory body to the General Assembly but are fulfilling it.

Respondent has essentially presented six arguments in its petition for reconsideration which we will address in the order raised.

The first argument is that our position ignores the budgeting and prediction considerations of the agencies. It stated that prior appropriations to each agency to pay indemnification claims would be extremely difficult and the amount of appropriation difficult to predict. Given the realities of the nature of a civil rights lawsuit this is simply not true. Those cases are rarely, if ever, decided in the same year they are filed. The agency knows at the time it presents its budget to the legislature how many lawsuits are pending and the potential amount of damages. Prediction is unnecessary. A budget request to the legislature is. While it may be that the agency does not want to request funds to pay damages allegedly caused

by the civil rights violations of its employees, it should not be able to avoid its obligation by sending the victim here. The legislative appropriations process is being unnecessarily bypassed and, in view of the express provisions of the Indemnification Act we quoted on page four of our previous opinion in *Norman*, improperly so.

The second argument Respondent raised was that requiring the agency to make the budget request before the legislature could delay payment for six months or more during which period the State could be liable for interest. Such a scenario would not occur if a prior appropriation was obtained. Moreover, in practice this would not occur regardless of a prior appropriation. First, our previous opinion was rendered sufficiently far in advance of the legislative timetable deadlines to allow the agency to make an appropriation request during the current legislative session. Historically, ordinary and contingent operating expenses appropriations bills of an agency have been signed by the Governor much sooner than the Court of Claims' special awards bill by which Respondent would have this claim paid. Claims of this type cannot be paid through this Court directly if the amount sought is in excess of $1,000.00 without prior legislative approval and appropriation and approval by the Governor. This can only be obtained twice a year so Respondent's position would clearly cause more interest to accrue. Secondly, our experience with this type of claim has shown us, as demonstrated by the filing dates, that Respondent is especially adept at controlling the date on which a claim of this nature is settled.

The third argument offered was that our position would cause this type of claim to be presented in piecemeal fashion with no general accounting for the impact of them. All State agencies submit separate budgets in advance of the fiscal year and both the legislature and

the Bureau of the Budget can better plan and account for them if they are aware of them in advance rather than when they are presented in a small line item of last minute amendment to the Court of Claims' special awards bill.

The fourth argument was based on the language of the Indemnification Act which we quoted on page four of our previous opinion. Respondent seeks to draw a distinction between the words "budget" and "appropriation". The distinction is only an insignificant one of semantics and need not be further addressed.

The fifth argument is that our position was contrary to legislative policy as evidenced by its past payment of such claims through this Court and no indication given through statutory change of dissatisfaction with the past procedure. We are simply fulfilling our obligation to advise the legislature of a situation which has not been properly presented to it in the past. This argument is interesting in view of Respondent's strongly asserted position in the *DeWoskin* case that we did not have jurisdiction.

The sixth argument is based on a misinterpretation of section 23 of the Court of Claims Act (Ill. Rev. Stat. 1979, ch. 37, par. 439.23). That section was inserted to cure certain perceived legal infirmities of the funding of Court of Claims' awards under our previous constitution and to voice the legislative policy against paying private bills but to have claims against the State presented to this Court first. As pointed out previously, we view these claims as ordinary expenses and not as of yet a proper "claim" to be filed in this Court.

In addition to the Respondent's petition for reconsideration, we feel that certain arguments made at the hearing should be addressed.

The parties sought to draw analogies between this type of claim and those involving lapsed appropriations. In its petition Respondent posed the question: Is the Court suggesting that in every claim a claimant should first seek an appropriation to the agency involved? This has never been the Court's position. It is our position, however, that before an agency incur an ordinary expense there be monies appropriated to pay it. Respondent further stated that every agency has authority to pay certain kinds of claims but is not appropriated the money or enough money to do so. If the agency does not have money to pay an obligation, it is not authorized to incur it as a general rule. The same is true if it has an insufficient amount of money. With the exception to the general rule, those obligations where the agency is "expressly required by law" to assume the obligation, at least some funds were previously on hand to pay such claims.

For purposes of clarification we also want to address our remarks in the previous *Norman* opinion where we said:

> "All the claims brought pursuant to the (Indemnification) Act after *DeWoskin* were uncontested in this Court as is the case at bar. We have not been asked to decide any issue; we have been used as a conduit for payment," *Norman, supra,* 3, 4.

We did not intend to imply that we would not entertain uncontested claims in this Court. Claims for lapsed appropriations must be brought here as well as other claims which eventually are settled or stipulated to. What we meant was that this Court should not be used for the purpose of essentially obtaining a deficiency appropriation to pay what we feel is an ordinary and foreseeable expense which should, under the present statutory framework be paid by the agency which incurred it.

It was also urged by the parties during oral arguments that our decision in the *Norman* case be applied

prospectively so as not to work an undue hardship on the Claimants who through no fault of their own have been put in the middle of the issues herein. We think it should be pointed out that those Claimants who accepted assignments of rights to indemnificaton after the *Norman* opinion should have been on notice. We also think it relevant to reiterate here that the *Norman* opinion was rendered sufficiently far in advance of the legislature's deadlines to allow the agencies to seek appropriations this session. However, because our position has been a significant and important departure from past practice, and so as not to work undue hardship on the Claimants, we hereby order that these claims be, and hereby are awarded in the amounts agreed to as per the stipulations on file.

In conclusion we feel that our approach stated in the previous *Norman* opinion and this opinion is correct as a matter of law based on the present statutory framework and the facts of these cases, that our position will be applied prospectively with respect to any case of this nature not pending as of the date of this opinion, and that we are fulfilling our role as an advisory body to the General Assembly and furthering the public policy of the State of Illinois.

| 83-CC-1028 | Mary Norman | Claimant awarded $22,500.00 |
| 82-CC-2764 | Shel Bannister *et al.* | Claimants awarded $133,829.70 |
| 83-CC-0467 | G. Flint Taylor | Claimant awarded $17,678.74 |
| 83-CC-1370 | Lonnie Arsberry *et al.* | Claimants awarded $12,200.00 |
| 83-CC-1576 | G. Flint Taylor *et al.* | Claimants awarded $2,150.00 |
| 83-CC-2413 | Seigfried Stubbs | Claimant awarded $3,585.00 |
| 83-CC-2508 | Richard Black | Claimant awarded $37,179.75 |
| 83-CC-2571 | University of Chicago | Claimant awarded $30,000.00 |
| 83-CC-2679 | Arnesta Griggs | Claimant awarded $12,500.00 |
| 83-CC-2714 | Legal Assistance Foundation of Chicago | Claimant awarded $4,532.60 |
| 83-CC-2788 | Andrew W. Edwards *et al.* | Claimants awarded $72,991.00 |