(No. 84-CC-2219–■■■■■■■■■■■■■)

JAMES LIN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed November 29, 1988.*
*Order filed June 12, 1989.*

DAVID UHLER, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

## ORDER

Montana, C.J.

Claimant, James Lin, originally brought this claim in March of 1984 seeking $18,321.21 in back wages based on an alleged discrepancy between what he had been paid and what he should have been paid for services rendered pursuant to an employment contract with the Board of Trustees of the State Community College of East St. Louis. Shortly thereafter the Respondent moved to have the claim put on general continuance due to the pendency of related lawsuits in State and Federal courts. Although not technically on general continuance, nothing transpired in this claim since that time until November 11, 1988. On said date the Claimant filed an amendment to his claim and the parties filed a joint stipulation to settle the amended portion of the claim. This matter is before the Court now for approval of the settlement agreement.

The Claimant's amendment to its claim is based on Federal court litigation. On January 31, 1986, the United States District Court for the Southern District of Illinois entered judgment in the civil case of *Lin v. State Community College, Board of Trustees*, No. 83-5494. Said judgment in pertinent part reads as follows:

"IT IS ORDERED AND ADJUDGED that judgment is entered in favor of the plaintiff, James Lin, and against the defendants, State of Illinois and Board of Trustees, in the sum of $73, 672.00 for loss of income to the present date and $7,367.00 for loss of retirement benefits.

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of the plaintiff, James Lin, and against Dr. Wheadon, in the sum of $25,000.00 for damages to the plaintiff's professional reputation and $25,000.00 for mental pain and suffering. In addition, judgment is entered in favor of the plaintiff, in the sum of $12,500.00 for punitive damages."

That judgment was based on a jury verdict. The court then entered judgment *n.o.v.* for the defendants and the plaintiff appealed. On July 22, 1988, the United States

Court of Appeals for the Seventh Circuit entered an order reversing the lower court's entry of judgment *n.o.v.* and remanded the case to consider any questions of equitable relief and attorney fees. The purpose of the amendment to the claim is to collect on the judgment and interest which has accumulated thereon. Matters of equitable relief and attorney fees are not before us.

Concurrent with the filing of the amendment to the claim, a joint stipulation was filed whereby the parties agreed to settle the claim and to the entry of an award by this Court. In relevant part, the joint stipulation reads as follows:

"1. This claim arises from judgment entered on January 21, 1986, in the United States District Court for the Southern District of Illinois, in the case of JAMES LIN v. State Community College, Board of Trustees, State of Illinois and Rosetta Wheadon, Docket Number 83-5494.

2. The parties have investigated this claim, and have knowledge of the facts and law applicable to the claim, and are desirous of settling this claim pursuant to said judgment in the interest of peace and economy. This joint stipulation for settlement is limited to the judgment entered January 31, 1986, in the case of JAMES LIN v. State of Illinois, et al., in the USDC for the Southern District of Illinois, Docket Number 83-5494, and specifically does *not* settle, compromise, or in any other manner affect any questions of equitable relief sought then or now or in the future nor attorney's fees accumulated after October 17, 1988.

3. Both parties agree that an award against the State of Illinois and Board of Trustees in the amount of $81,039.00, plus statutory interest at 6% compounded annually; and an award against Dr. Wheadon in the amount of $62,500.00, plus statutory interest at 9% compounded annually, is both fair and reasonable.

4. Claimant agrees to accept, and Respondent agrees to pay Claimant $81,039.00, plus statutory interest of 6% compounded annually and $62,500.00 plus statutory interest of 9% compounded annually in full and final satisfaction of this claim arising from the judgment entered on January 31, 1986, in the USDC for the Southern District of Illinois, Docket Number 83-5494. This joint stipulation for settlement is limited to said judgment and specifically does *not* settle, compromise, or in any other manner affect any question of equitable relief sought then, now or in the future nor any attorney's fees accumulated after October 17, 1988."

This Court is not bound by such an agreement between the parties. However, in a case such as this,

where a Federal court has already entered judgment, this Court is but a conduit for payment, for if the Federal court has jurisdiction to hear the case and enter judgment, it has the power to enforce it.

As for the judgment against the State, we do approve the settlement and will enter the award in accordance with the jury's verdict. As for that portion of the settlement which relates to the verdict against Dr. Wheadon, we will reserve judgment for the following reasons. Neither the amendment to the claim nor the joint stipulation indicate who Dr. Wheadon is. From the Federal court complaint attached to the motion for general continuance, it appears that Dr. Wheadon is the person who actually discharged the Claimant from his employment. It is also unclear as to why this Court is being asked to pay the judgment, which includes punitive damages, on this person's behalf.

Although not expressly stated in any of the pleadings, it would appear that this portion of the claim was brought pursuant to section 1 of "An Act to provide for representation and indemnification in certain law suits" (hereinafter referred to as the Act) (Ill. Rev. Stat., ch. 127, par. 1301 *et seq.*). The Federal court action was based on alleged violations of civil rights and Dr. Wheadon would appear to be an "employee" of the "State" as defined in the Act. This Court's position on claims made pursuant to the Act has been reported in a series of decisions at 35 Ill. Ct. Cl. 895. Those decisions were not reported in chronological order. We call the parties' attention to the decisions of May 2, 1983, and June 29, 1983, the first and last decisions, which we will refer to as *Norman I* and *Norman II*. In *Norman I*, this Court dismissed the claim based on the then existing statutory language which provided that payment should come from the agency whose employee the judgment

was against. In *Norman II*, the matter was before the Court on rehearing, and the Court elaborated on the prior decision addressing the Respondent's practical and policy-related arguments. In *Norman II*, the Court approved awards in claims brought pursuant to the Act stating that the position would be applied prospectively in any such case not pending as of the date of that decision. The claim at bar was filed after that decision.

Since *Norman II*, the Act has been amended to provide for a different method of payment. See section 2(f)(ii) of the Act (Ill. Rev. Stat., ch. 127, par. 1302(f)(ii)). Instead of providing for allocation of the payment from the employee's agency, the Act now provides that the Respondent's Department of Central Management Services (hereinafter referred to as CMS) shall effect payment from funds specifically appropriated for the payment of such claims. This statutory amendment does not affect the rationale behind the *Norman* decisions; a strong argument could be made that the amendment reinforces the reasoning discussed in *Norman II* at 905, 906. The State is better able to account for the impact of judgments for violations of civil rights against its employees.

We take judicial notice that the funds appropriated to CMS for payment of the judgments have not always been sufficient to cover all of the judgments entered. Our position as stated in *Norman I* (at page 900) remains unchanged. Appropriating funds is the prerogative of the legislature.

For the reasons stated above, we are withholding judgment on that portion of the settlement which relates to Dr. Wheadon to afford the parties to take whatever actions in response to this decision they feel appropriate or to clarify the pleadings by amendment.

Accordingly, it is hereby ordered as follows:

1. that the Claimant be, and hereby is, awarded the gross sum of $73,672 in back wages for the period of June 30, 1983, through January 31, 1986 (as consistent with the Federal court judgment), plus all appropriate employer contributions and less all appropriate employee deductions except that deduction for the employee's contribution to his retirement system;

2. that the Claimant be, and hereby is, awarded the gross sum of $7,367 for retirement benefits (again consistent with the Federal court judgment) less only customary withholdings for Federal and State taxes;

3. that the Claimant be, and hereby is, additionally awarded interest on the sum of $81,039 at the rate agreed to by the parties of 6% compounded annually beginning January 31, 1986, and accruing to the date payment is vouchered to the Office of the State Comptroller;

4. that our decision on the balance of the settlement as relates to Dr. Wheadon be, and hereby is, held in abeyance;

5. that payment of the awards made herein be effected as soon as practical and not delayed pending resolution of that portion of the claim as relates to Dr. Wheadon.

## ORDER

MONTANA, C.J.

This cause comes on to be heard following the filing of Claimant's second amendment to complaint in response to this Court's order filed November 29, 1988, due notice having been given, and the Court being advised;

On November 29, 1988, an order was filed in this claim which, among other things, withheld approval of a portion of a settlement reached by the parties. That portion of the settlement related to a jury verdict against Dr. Wheadon in the amounts of $25,000 for damage to the Claimant's professional reputation, $25,000 for mental pain and suffering, and $12,500 for punitive damages. The order directed the parties to take whatever action they deemed appropriate in response to the Court's discussion of the legal issues involved with that portion of the settlement or to clarify the pleadings by amendment to indicate on what basis the Court should approve the stipulation to pay the judgment against Dr. Wheadon.

In response to that order, Claimant filed the pleading at bar. In relevant part, at paragraph 6, Claimant states as follows:

"6. Pursuant to the Settlement Agreement between the parties dated February 8, 1989, page 5, paragraph 4(1), which Settlement Agreement is attached hereto and incorporated herein, the plaintiff states Dr. Rosetta Wheadon was, at all times pertinent, the president of and the agent of the State Community College of East St. Louis, and that judgment should be entered against Dr. Rosetta Wheadon and the State and an award entered in accordance with the jury's verdict, pursuant to Ill. Rev. Stat., Ch. 127, §1301, *et seq.* Such award shall include punitive damages, because the USDC jury verdict did not make a finding that Dr. Wheadon's conduct was not intended to serve or benefit the interests of the State, nor has the Attorney General made such determination. Instead, the Attorney General, in his discretion and with the consent of Dr. Wheadon and the other respondents, has entered into a Settlement Agreement dated February 8, 1989, and Joint Stipulation For Settlement filed November 7, 1988, which specifically include the punitive damages."

In the prayer for relief, Claimant seeks entry of judgment in the amount of $65,000.00 plus statutory interest.

As was explained in the order of November 29, 1989, this Court's position on claims brought pursuant to section 1 of the Act (Ill. Rev. Stat., ch. 127, par. 1301 *et seq.*) has remained unchanged since the *Norman*

decisions. (*Norman v. State* (1983), 35 Ill. Ct. Cl. 895.) The statute presently provides that payments made pursuant to that Act are to be paid "from the State Treasury on the warrant of the Comptroller out of appropriations made to the Department of Central Management Services specifically designed for the payment of * * * (such claims)." No action by the Court of Claims is required to effect payment. In a case such as the one at bar there is no need for the Court of Claims to approve a settlement or enter judgment.

For the reasons stated hereinabove, it is hereby ordered that the balance of this claim be, and hereby is, dismissed.

## APPENDIX A

Identification of the State Contributions and Deductions from Back Salary Award.

To the University Employees' Retirement System:

| | |
|---|---|
| Employee's contribution to University Employees' Retirement System | .00 |
| Employee's contribution to FICA | .00 |
| State's contribution to University Employees' Retirement System | 7,227.56 |
| State's contribution to FICA | .00 |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

| | |
|---|---|
| Claimant's Federal income tax | 14,734.40 |

To Illinois Department:

| | |
|---|---|
| Claimant's Illinois income tax | 1,841.80 |

To the Claimant:

| | |
|---|---|
| Net salary | 57,095.80 |

Total Award $80,899.56